UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRIDGETT TENNEY,

        Plaintiff,

        v.                            CASE NO. 8:05-CV-662-T-23MAP

TOTAL RENAL CARE, INC.,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

    Plaintiff, who missed work due to complications in her pregnancy, claims her employer terminated her in violation of the Family and Medical Leave Act of 1993 ("FMLA"). *See* 29 U.S.C. § 2601 *et seq.* Defendant denies this; instead, it moves for summary judgment contending Plaintiff failed to comply with her employer's attendance and punctuality policies and provided insufficient medical certification from her healthcare provider concerning her health condition (doc. 15). After consideration, I find disputed issues of fact exist and recommend the Defendant's motion be denied.[1]

    *A. Standard of Review*

    Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary

---

  [1] The district judge referred this matter to me to conduct proceedings and issue a report and recommendation (doc. 40). *See* 28 U.S.C. §636.

judgment motion; "the requirement is that there be no *genuine* issue of *material* fact.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material.  *Id.*

### B.  Background

Defendant provides outpatient dialysis services at multiple locations, including the Hernando Kidney Center where Plaintiff worked as a Patient Care Technician (PCT).  Twelve weeks into her pregnancy, Plaintiff experienced high blood pressure and swollen extremities.  Her obstetrician, concerned that she might be at risk for toxemia, advised her on August 20, 2004, not to work for ten days[2]  (Pl.'s Dep. 50:16-51:1, 64:16-20, Exhibit 14, doc. 24; Dr. Shakfeh's Dep. 34:7-35:18, 53:1-21,  doc. 23).  Plaintiff supplied a physician's note to her supervisor, Thomas Hanley, who explained the FMLA and suggested she use intermittent FMLA leave (Hanley's Dep. 18-21-19:9; doc. 18-2; Pl.'s Dep. 55:3-23, 66:15-23).   Hanley, however, never reviewed the Defendant's procedure for requesting medical leave with the Plaintiff (Pl.'s Dep. 61:3-14).   Nonetheless, the Defendant's written FMLA policy required an employee submit medical certification of the need for leave.   And, in compliance with the FMLA, if "the need for a leave is foreseeable, the [employee] must provide 30 days' written notice.  If the need for a leave is not foreseeable or if it is otherwise not possible to provide 30 days' notice, notice must be provided within one or two days of learning of the need for the leave, or as soon as practicable."  *See* doc. 24, exhibit 6, p. 36.  For

---

[2]  Toxemia of pregnancy is a disorder of unknown cause peculiar to pregnancy that is usually characterized by sudden onset and characterized by hypertension, albuminuria, edema, headache, and visual disturbances, and may or may not be accompanied by convulsions. *Merriam-Webster Medical Desk Dictionary*, p. 723 (1993).  Dr. Shakfeh testified that usually toxemia happens after thirty weeks of pregnancy, but he issued notes excusing Plaintiff from work because her slight blood pressure elevation had the potential to worsen.  "[I]t is something you have to be cautious" about (Shakfeh's Dep. 34:12-15, 47:23-48:4).

2

reduced or intermittent leave, the requesting employee "must attempt to schedule [her] leave so as not to interrupt" the Defendant's operations. *Id.*  In any event, the Defendant's written policy puts the onus on the employee to notify her supervisor: "If you cannot report to work notify your supervisor the day before whenever possible.  It's your responsibility to get the message to your supervisor or department head each day you are unable to report to work" (doc. 24, ex. 24).

While the foregoing facts are mostly undisputed, the events of the next few weeks, the motivations of the parties, and the customary FMLA practices of the Defendant are contested.  In the main, the summary judgment record reveals a failure to communicate not only about ongoing medical issues and the needs of both sides but also the specific application of the FMLA in the Defendant's workplace.  Thus, while the parties recognize the FMLA allows employers to "require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave," *see* 29 C.F.R. § 825.302(d), both sides dispute what the Defendant's customary practices were for reporting FMLA absences.  Defendant states its Hernando employees were required to call Hanley directly on his cell phone or at his home before their shift so that he could attempt to find a replacement for them.  Plaintiff, however, claims she was unaware of this policy and says the practice was for employees to call in to the answering service to report their inability to work and the answering service would in turn call Hanley.  At least one other employee agrees that Defendant had several differing policies on reporting absences during Plaintiff's tenure.  At first, employees were instructed to call the answering service, but later a newsletter dated October 23, 2003, advised employees to call Hanley directly (Gutschmidt's Dep. 27:5-24, doc. 31).  The human resource manager, however, testified that the newsletter was not an "official" pronouncement and was unsure whether Plaintiff ever received it (Brock Dep. 59:1-60:2, doc. 30).

3

This confusion about reporting FMLA surfaced in Plaintiff's case. Plaintiff says she needed bed rest after August 18 due to continuing complications and her obstetrician wanted to monitor her on a weekly basis to see if she required further bed rest (Pl.'s Dep. 77:24-78:3, 85:12-18, 94:20-95:2). Thus, she stayed in close contact with her doctor and his staff concerning her health status to determine if she could work each week. Whether she clearly conveyed all this to her supervisor or to anyone else at work, however, is unclear. Plaintiff believes she provided doctor's notes excusing her work absences, and says she reported her inability to work with the Defendant's answering service. Defendant, on the other hand, asserts Plaintiff failed to report to work on September 6 and 13 without properly notifying Hanley as required. Defendant maintains Plaintiff did not provide doctor's notes for all her missed days and the notes she supplied were vague and too late. These failures to timely alert Defendant caused significant inconveniences. Hanley, in order to meet mandated staff to patient ratios, scrambled to replace her on September 6 and 13 (Hanley's Dep. 15:22-16:25, 39:24-40:6). After September 13, Hanley did not schedule Plaintiff for any work shifts. And even though she states she was ready to work by September 20, the Defendant contends she made only a few unsuccessful attempts to call Hanley to discuss her plans and failed to return Hanley's calls to her (Hanley's Dep. 47:5-48:20; Pullen's Dep. 18:3-6, doc. 29; Pl.'s Dep. 108:2-14, 122:1-3). *See also* Termination Letter, doc. 24, Ex 22. These events prompted the Defendant's human resource manager to suggest Hanley send Plaintiff a certified letter telling her it was imperative she call. Hanley, however, failed to take such action (Brock's Dep. 45:14-17, ex. 14). After assessing Plaintiff's attendance problems, Defendant terminated her effective September 20, 2004, via a letter dated September 30, 2004. Defendant's stated reason was Plaintiff's failure to abide by its family medical leave and attendance and punctuality policies. *See* doc. 24, ex. 22.

*C. Discussion*

Congress passed the FMLA to balance employees' need to take reasonable leave for serious health conditions against employers' legitimate interest in having sufficient notice of employees' intended leave so that they may make reasonable arrangements to fill in for employees who are absent on FMLA leave.  The Act provides eligible employees with a total of twelve workweeks of leave during any twelve month period because of a serious health condition that makes the employee unable to perform the functions of the position of such employee. 29 U.S.C. § 2612(a)(1)(D).  Leave taken in relation to a serious health condition may be taken intermittently or on a reduced leave schedule when medically necessary.  *See* 29 U.S.C. §2612(b)(1).  Section 2615(a) prohibits two specific types of conduct by employers:

(1)     Exercise of rights

It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

(2)     Discrimination

It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

29 U.S.C. § 2615(a)(1) and (2).

Plaintiff's complaint fails to specify whether her claim is one under § 2615(a)(1) or § 2615(a)(2). The distinction is significant because the proof required for each is different.   Section 2615(a)(1) claims do not require proof of any particular intent.  To state a claim that an employer has interfered with a substantive FMLA right, a plaintiff need only demonstrate that she was entitled to but denied the right. She does not have to allege that her employer intended to deny the right; the employer's motives are irrelevant.  *Strickland v. Water Works and Sewer Board of City of*

*Birmingham*, 239 F.3d 1199, 1208 (11th Cir. 2001).  In contrast, § 2615(a)(2) requires proof the employer acted with discriminatory or retaliatory intent.  Since the Plaintiff contends that her employer interfered with her exercise of FMLA rights and terminated her employment in retaliation to her taking FMLA leave, she raises both interference and  discrimination claims under 29 U.S.C. §§ 2615(a)(1) and (2).

### 1. interference claim

In determining the validity of Plaintiff's § 2615(a)(1) claim, the issue is simply whether there is a factual dispute as to whether Defendant denied Plaintiff a substantive right guaranteed by the FMLA – the right to take a medical leave. It is undisputed that Plaintiff suffered pregnancy complications and supplied a number of notes from her treating obstetrician regarding her inability to work on certain dates during August and September 2004.  The parties dispute, however, whether Plaintiff provided sufficient medical certification of her condition, whether she gave timely notice of her FMLA absences, and whether she complied with the Defendant's attendance policies.

### a. medical certification

Although Defendant argues that Plaintiff was not entitled to FMLA leave since she failed to satisfy the FMLA and her employer's medical certification requirement,  Defendant did not satisfy its requirements for notifying Plaintiff of her FMLA entitlements and obligations, and specifically her responsibility to provide medical certifications to Defendant. In light of Defendant's neglect and the fact that it had the burden of requesting more detailed medical information from Plaintiff, a reasonable jury could find Defendant interfered with Plaintiff's FMLA rights.

Accordingly, summary judgment inappropriate.[3]

To ensure employees are aware of their FMLA rights and responsibilities, the regulations interpreting the FMLA require employers to notify their employees of their FMLA entitlements and obligations, and specifically the requirements for the employee to furnish  medical certification of a serious health condition and the consequences of a failing to do so, in their employee handbooks, as Defendant did, and also after an employee has notified the employer of the need for FMLA leave.[4,5]   29 C.F.R. § 825.301(a)(1).  When an employer "…fails to provide notice in accordance with the provisions of this section, the employer may not take action against an employee for failure to comply with any provision required to be set forth in the notice." 29 C.F.R. § 825.301(f).  While the employee handbook, "One For All," Defendant gave to Plaintiff on May 7, 2003, included the requisite notice information, Defendant failed to provide any other handbooks or FMLA notices to

---

[3] Defendant also says Dr. Shakfeh cannot establish Plaintiff had a serious health condition and that Dr. Shakfeh cannot excuse Plaintiff from work without first examining her (Def.'s motion for summary judgment, 14-15, doc. 15).  The FMLA regulations specifically acknowledge that "any period of incapacity due to pregnancy, or for prenatal care" is a "serious health condition" entitling an employee to FMLA leave. 29 C.F.R. § 825.114(a)(2)(ii).  "Absences attributable to incapacity under paragraph (a)(2)(ii)… qualify for FMLA leave even though the employee … does not receive treatment from a health care provider during the absence. …  An employee who is pregnant may be unable to report to work because of severe morning sickness."  29 C.F.R. §825.114(e).  Following these regulations, it is immaterial whether Plaintiff sought or received treatment from Dr. Shakfeh on the dates he excused her from work, and it is irrelevant whether she was experiencing swelling, high blood pressure, or nausea related to morning sickness, as the FMLA provides medical leave for all incapacity due to pregnancy.

[4] The agency interpretation of the FMLA is persuasive authority because "the well-reasoned views of the agencies implementing a statute constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.  *Spraggins, infra*,quoting *Bragdon v. Abbott*, 524 U.S. 624, 642 (1998).

[5] "…The notice shall be given within a reasonable time after notice of the need for leave is given by the employee – within one or two business days if feasible.  If leave has already begun, the notice should be mailed to the employee's address of record."  29 C.F.R. §825.301(c).

Plaintiff after that date and therefore shirked its responsibility under the regulation. *See* Plaintiff's deposition, doc. 24, pp. 24-26, exhibits 4, 6.

Because an employee may not fully understand her FMLA obligations, once notified of an employee's need for potentially FMLA qualifying leave, an employer bears the burden of notifying the employee if it considers her medical certifications incomplete and provide her a reasonable time to correct the defects.[6] 29 C.F.R. § 825.305(d).   The Eleventh Circuit recognizes this duty. *Cruz v. Publix Super Markets, Inc.*, 428 F.3d 1379, 1384 (11th Cir. 2005) (once employee adequately conveys to employer sufficient information to put it on notice at time of request or before that absence is potentially FMLA-qualifying, there is sufficient notice to shift the burden to the employer); *Strickland v. Water Works and Sewer Bd. Of City of Birmingham*, 239 F.3d 1199 (11th Cir. 2001) (interpreting §825.305(d) and vacating district court's summary judgment for employer where employee had given notice of need for unforeseeable leave sufficient to shift burden of further inquiry to employer as to whether absence truly qualified for FMLA protection).   Plaintiff had advised Defendant, particularly Hanley, that she was suffering from high blood pressure, severe swelling, and was at risk to develop toxemia.   This notice was sufficient to shift the burden to Defendant to request additional information from her.   Instead, Defendant left telephone messages

---

 [6]  The Defendant relies on a different regulation, 29 C.F.R. §825.307.  This regulation provides that "[a]n employer who has reason to doubt the validity of a medical certification may require the employee to obtain a second opinion at the employer's expense."  Defendant asserts that its failure to request a second medical opinion did not waive its right to argue now that Plaintiff's medical certifications were invalid. *See Rhoads v. FDIC*, 257 F.3d 373 (4th Cir. 2000) (finding Defendant's failure to request a second opinion did not waive employer's right to contest employee's claim that she had a serious health condition since language in §825.307 is permissive, not mandatory).  Although I agree that Defendant did not waive any rights by failing to request a second opinion, because its central argument concerns the content of Plaintiff's medical certifications and not the validity of her doctor's opinions, I find other regulations cited *supra* more pertinent.

on Plaintiff's cell phone asking her to "call in if you're available" and called Dr. Shakfeh's office in an attempt to learn more about Plaintiff's ability to work (Hanley's Dep. 47:12). Ultimately, Defendant waited until after Plaintiff's termination and in the midst of litigation to complain about her incomplete or deficient medical certifications.[7]

Against this backdrop, a jury could conclude that Defendant neglected to advise Plaintiff of the FMLA medical certification requirements and consequences for not following them. And, a jury could determine Plaintiff's medical certifications were sufficient, or at least notified Defendant of her condition sufficient to shift the burden to Defendant to request further information. Accordingly, a jury should be permitted to determine whether Plaintiff complied with the FMLA medical certification requirement and whether Defendant's act of terminating her Plaintiff interfered with her FMLA rights.

### b. Defendant's attendance and punctuality policies

The FMLA regulations set out notice requirements an employee owes to an employer. One regulation addressing foreseeable leave provides that "[a]n employee must provide the employer at least 30 days advance notice before FMLA leave is to begin if the need for the leave is foreseeable … notice must be given as soon as practicable … Whether the leave is to be continuous or is to be taken intermittently or on a reduced schedule basis, notice need only be given one time, but the employee shall advise the employer as soon as practicable if dates of scheduled leave change or are

---

[7] Hanley's phone calls to Dr. Shakfeh and his voice messages on Plaintiff's cell phone for her to return his calls are not the equivalent of written notification of one's obligation to provide adequate certification and the consequences of failing to do so. *Sims, supra,* at 1267 ("An employer cannot meet its obligation to notify an employee of his specific obligations under the Act, including the consequences of failing to meet any such obligations, with a notice that mentions nothing whatsoever about the FMLA.").

extended, or were initially unknown." *See* 29 C.F.R. §825.302(a).  This regulation acknowledges that employers "may also require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave."  29 C.F.R. 825.302(d).  When the need for leave is unforeseeable, employees must give notice "as soon as practicable under the facts and circumstances of the particular case.  It is expected that an employee will give notice to the employer within no more than one or two working days of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible."  29 C.F.R. §825.303(a).   At least one court in the Eleventh Circuit has recognized the difficulty in determining "practicable" notice. *Spraggins, supra,* at 1240.  In *Spraggins*, the court held that if it is not practicable for an employee to give 30-days advance notice of the need for leave, the employee must give notice as soon as practicable under the facts and circumstances.  The court determined Spraggin's employer could require notice one hour before its employees' shift began as long as it is reasonable under the individual circumstances to give such notice.  "But if the employee cannot meet the one-hour requirement, then under the FMLA, the employee must give notice as soon as practical, up to one or two days after learning of the need for leave, unless giving notice within the one-or two-day period is impractical as well." *Id.* at 1240.  The *Spraggins* court concluded the evidence presented to the court on summary judgment was inconclusive as to when the employee knew that he would not be able to work and thus when it would have been practical for him to be required to notify his employer. *Id.*

In view of the disputed material facts, it is especially difficult to decide if Plaintiff notified Defendant of her FMLA leave as soon as practicable.  Admittedly, Plaintiff's weekly notices to the Defendant forced Hanley to quickly find replacements for Plaintiff.   Yet, these weekly notices

corresponded with the nature of Plaintiff's condition and her physician's instructions that he or his staff would monitor her condition weekly and assess her ability to work. Added to this uncertainty about her future work status was Hanley's vague instructions and the Defendant's unclear reporting practices. In short, a jury could reasonably finds that under all the circumstances, the Plaintiff's reasonably reported her absences as soon as practicable.

### 2. discrimination claim

Plaintiff's retaliation claim is analyzed under the familiar *McDonnell Douglas* framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 798 (11th Cir. 2000). To make a prima facie case, the Plaintiff must show: (1) she exercised her rights guaranteed by the FMLA; (2) she was subjected to an adverse employment action; and (3) a causal link exists between the previous two elements. *Brungart,* 231 F.3d at 798. Here, the core dispute centers on whether Defendant wrongfully terminated Plaintiff in retaliation for taking FMLA leave or rightfully terminated her for violating its attendance and call-in policies. Viewing the evidence in the light most favorable to the Plaintiff, a reasonable jury could conclude that Plaintiff's intermittent FMLA leave and her termination for failure to comply with Defendant's call in and attendance policies were not wholly unrelated. And a sufficient dispute of facts exists as to whether she correctly followed the Defendant's policies for reporting FMLA absences and acted reasonably under her peculiar circumstances to make summary judgment inappropriate.

### D. Conclusion

For the reasons stated herein, it is hereby

RECOMMENDED:

11

1.      Defendant's Motion for Summary Judgment (doc. 15) be DENIED.

IT IS SO REPORTED in chambers at Tampa, Florida on June 22, 2006.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE


### NOTICE TO PARTIES

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice.  28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (*en banc*).

Copies furnished to:
The Hon. Steven D. Merryday
Counsel of Record